**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **CRIMINAL NOS. 20-415, 21-424** |
| **v.** | : | |
| **HERBERT ROBINSON** | : | |

## UNITED STATES' SENTENCING MEMORANDUM

The defendant was the leader of the Herbert Robinson drug trafficking organization ("Robinson DTO"), which sold hundreds of kilograms in the Philadelphia and elsewhere from February 2019 to January 2021. As the leader of the DTO, the defendant travelled internationally to meet with prospective suppliers, supervised the activities of lower-ranking members of the DTO, and directed other DTO members to conduct transactions involving, collectively, hundreds of kilograms of cocaine and millions of dollars in cash drug proceeds. The defendant also laundered the cash that he made from his drug trafficking activities, possessed a firearm in furtherance of his drug trafficking crimes, and evaded taxes by not reporting at least $1.6 million in income from his drug trafficking activities. The defendant committed these significant crimes, despite having two prior drug trafficking crimes. After balancing the severity of his conduct, the need for deterrence, and the remaining § 3553(a) factors—most notably, his complete acceptance of responsibility and the need to ensure consistency in sentencing among similarly situated individuals—the government submits that a sentence below the advisory guidelines of life imprisonment.

## I. PROCEDURAL BACKGROUND

On August 11, 2021, the defendant was charged by superseding indictment with nine drug and firearm offenses—i.e., conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (one count), attempt to possess with intent to distribution 5

kilograms or more of cocaine (two counts), use of a communication facility in furtherance of a drug offense (two counts), distribution and possession with intent to distribute 5 kilograms or more of cocaine (two counts), conspiracy to commit money laundering (one count), and possession of a firearm in furtherance of a drug trafficking crime (one count). On October 27, 2021, United States filed a three-count information charging the defendant with three counts of tax evasion. On November 10, 2021, the defendant pled guilty to all twelve counts pursuant to a guilty plea agreement.

## II. SENTENCING CALCULATION

The government agrees with the Probation Office's calculation of the advisory guidelines range of life imprisonment, based on an offense level of 43 and criminal history category of VI.

The guideline calculation is as follows:

- Base offense level (§ 2D1.1(a)): 38 (over 450 kilograms of cocaine)
- Maintaining a premises for drug trafficking (§ 2D1.1(b)(12)): +2
- Conviction under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)): +2
- Organizer or leader of criminal activity involving 5 or more participants or was otherwise extensive (§ 3B1.1(a)): +4
- Acceptance of responsibility (§ 3E1.1): -3
- Total offense level: 43

The defendant has nine criminal history points, which would place him in criminal history category IV. However, because he has two prior controlled substance offenses (PSR ¶ 121, 122), he is a career offender, which fixes the criminal category at VI.

## III. ANALYSIS OF STATUTORY FACTORS

After calculating the guidelines range and ruling on any pending motions, the Court must

consider the sentencing factors set forth in Section 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

**A. The Nature and Circumstances of the Offense**

The defendant's crimes were incredibly serious, as he was the leader of the Robinson DTO, which distributed hundreds of kilograms in the Philadelphia area and elsewhere throughout the country. As the leader of the DTO, the defendant was responsible for recruiting others to join the DTO and carry out its objectives. The defendant was also the primary point of contact with his suppliers, which were located in the United States, Mexico, Jamaica, and Colombia, among other places. Without the defendant's relationships and contacts with those suppliers, the Robinson DTO would not have been able to function. The defendant personally carried out transactions of bulk quantities of cocaine and cash drug proceeds, although most of the time, the defendant delegated those tasks to lower-level members of the DTO.

While he was the leader of the Robinson DTO, the defendant:

- Traveled internationally at least four times to meet with prospective drug suppliers in Mexico, Jamaica, and Colombia.

- Delivered cash drug proceeds, or arranged for co-conspirators to deliver cash proceeds, in the amounts of approximately $244,250, $444,315, $90,245, $865,235, $395,160, $395,225, and $81,065, for a total of approximately $2,500,000. On July 14, 2020, the defendant and Samyre Washington met with Antoine Davis, a supplier to the Robinson DTO, who was charged in Case No. 20-cr-230, at one of the Robinson DTO stash houses. Investigators stopped Davis' vehicle shortly after the meeting and recovered from the vehicle approximately 21.9 kilograms of cocaine and $2,361,730 in cash. On July 22, 2020, two members of Robinson DTO collected bulk quantities of U.S. currency and later delivered that cash to Davis. Shortly thereafter, Davis was car stopped and investigators recovered $2,444,251 in bags that Overton loaded into Davis' vehicle.
- Arranged for other members of the DTO to execute cocaine transactions of approximately 73.6 kilograms, 9.9 kilograms, 23 kilograms, and 30 kilograms. Additionally, in May 2020 and July 2020, the defendant was responsible for obtaining hundreds of kilograms of cocaine from Davis and processing the cocaine for wholesale distribution at a stash house belonging to the Robinson DTO. This process involved gathering many of the Robinson DTO members at a stash house, receiving the cocaine (which was concealed in boxes) from Davis, extracting the cocaine from the boxes, mixing the cocaine with cut and other substances, packaging the cocaine into kilogram-sized bricks, and distributing the bricks to individuals who would then sell the drugs.

From 2017 to 2019, the defendant failed to report approximately $1.6 million in income, resulting in a tax loss of $576,348.

Due to his status of the leader of a large-scale DTO, the defendant profited by obtaining significant sums of cash. Unsurprisingly, then, the defendant had to launder this money in order

to be able to use it. For example, the defendant provided an accountant, M.H., approximately $75,000 in cash drug proceeds so that M.H. could use his business account to deposit those funds and write checks to third parties for the benefit of Herbert Robinson. Some of these checks included improvements and renovations to the defendant's mansion in Pennsylvania. Also by way of example, K.W., the owner of a title agency, agreed to assist Robinson by depositing hundreds of thousands of dollars in cash drug proceeds into her business accounts which she then used to write checks to third parties for the benefit of Robinson. The purpose of funneling the money through these third parties was to conceal that the money was derived from drug trafficking and, thus, could be used as if it were lawfully obtained money.

Also unsurprisingly, due to his status of the leader of the DTO, when investigators searched his residence on the day of his arrest on January 11, 2021, they located a firearm.

**B. The History and Characteristics of the Defendant**

The defendant committed the crimes in this case, despite having been convicted of three prior felonies. PSR ¶ 121–23. In 1996, the defendant was sentenced to 90 months' imprisonment in this district for cocaine trafficking, possession of a firearm in furtherance of that crime, and straw purchasing of firearms. In that case, the defendant supplied crack-cocaine to several individuals for street-level distribution. Law enforcement executed search warrants at the defendant's residences, which resulted in the recovery of 312 grams and 21 grams of crack-cocaine, respectively.

The defendant served an additional 60 months' imprisonment after violating his supervised release due to him committing another drug trafficking offense. In that case, the defendant was convicted in the Philadelphia Court of Common Pleas for selling four ounces of crack-cocaine to a confidential information. Before the planned transaction, the defendant was

stopped by law enforcement and found to be in possession of 28.9 grams of crack. The defendant was sentenced to 12 months' to 4 years' imprisonment. His federal supervised release sentence of 60 months' imprisonment ran consecutively to this state sentence, thus yielding a very significant sentence for this conviction.

Finally, while in state custody, the defendant possessed contraband—namely, a cell phone—and was sentenced to 10 to 23 months' imprisonment.

It is quite troubling that, after receiving two significant sentences for drug trafficking, the defendant would not only re-offend but re-offend in such a significant fashion.

When weighing the defendant's characteristics, the Court should also consider that the defendant completely accepted responsibility. The defendant indicated early on through counsel that he intended to plead guilty in Case No. 20-cr-415 and never filed any pretrial motions. He later pled guilty to additional charges (tax evasion) pursuant to an information. In his plea agreement, the defendant agreed to forfeit substantial amounts of property that he obtained through his crimes, agreed to forfeit $100,000,000 (the proceeds obtained from his drug trafficking crimes), and agreed to pay restitution to the Internal Revenue Service. As a result, the government did not need to present the tax evasion charges to a grand jury, and the Court did not need to preside over what would have been a lengthy and complex trial or rule on any pretrial, posttrial, or forfeiture-related motions. In sum, the defendant's early guilty plea allowed the government and Court to allocate their resources efficiently during the pendency of this case.

**C. The Seriousness of the Offense, Respect for the Law, and Just Punishment**

But for the defendant's complete and prompt acceptance of responsibility, a guidelines' sentence may have been warranted to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

**D. Deterrence and Protecting the Public**

The Court must also consider the need to protect the public and to deter the defendant and others from engaging in similar crimes in the future. Here, there is a substantial need for deterrence given that the defendant committed this offense after having committed a prior federal drug and firearm conviction and state drug conviction—for which he was sentenced to 90 months' imprisonment and 1 to 4 years' imprisonment, plus 5 years' imprisonment for violating supervised release. These cases have clearly not deterred the defendant from committing further crimes or caused him to stop pumping illegal drugs into the community. Accordingly, a significant custodial sentence is needed to serve the goal of deterring this defendant and others from engaging in future criminal conduct and protecting the community.

**E. Other Considerations**

There is no need to adjust defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The government is not aware of any unique issues regarding education, vocational training or medical needs relating to this defendant.

**F. Need to Avoid Unwarranted Sentence Disparities**

To date, ten co-defendants in Case No. 20-cr-415 have been sentenced. Ross Brooks, Marcus Washington, and Marvin Watson, the number 3, 5, and 6 defendants in the indictment, received sentences of 144, 140 months, and 108 months, respectively. All three had extensive criminal histories (categories IV, VI, and V, respectively). Washington and Watson participated in the conspiracy for over a year, and Brooks had a separate methamphetamine trafficking operation and was found with two firearms at the time of his arrest. Seven lower-level co-defendants have also been sentenced: Melvin Butler, who supplied approximately 19 kilograms

of cocaine to the Robinson DTO and had a prior federal drug trafficking conviction, received a sentence of 60 months; Kashon Adade and Randall Overton, who helped process cocaine for wholesale distribution, received sentences of 72 months and 60 months; James Flack, who primarily assisted with money drops over a short period of time, received a sentence of 48 months; Gilberto Alaniz, a Texas-based drug courier with no criminal history, received a sentence of 41 months; Antonio Simmons, a regional supplier, received a sentence of 54 months, and Oscar Von Tyler, a regional supplier with an extensive criminal history and track record of violence, received a sentence of 96 months imprisonment.

In Case No. 20-cr-230, defendant Antoine Davis, who was a large-scale supplier to the Robinson DTO in 2021, received a sentence of 96 months' imprisonment.

A below-guidelines sentence would be consistent with the sentences imposed on other members of the Robinson DTO.

## IV. CONCLUSION

For the foregoing reasons, the government submits that a sentence below the guidelines range is appropriate.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Date: November 20, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Sentencing Memorandum to be served by ECF and email upon counsel for defendant:

James A. Funt, james@gpfflaw.com

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Dated: November 20, 2024